Alexander **KOMARENKO, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 92–70595.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1994.

Decided Sept. 9, 1994.

---

Daniel E. Kritz, Sideman & Bancroft, San Francisco, CA, for petitioner.

Francesco Isgro, Attorney, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondent.

Before: FLETCHER, KOZINSKI and TROTT, Circuit Judges.

TROTT, Circuit Judge:

On March 12, 1990, Alexander Komarenko, a former Soviet citizen and a lawful perma-

nent resident of the United States, was convicted of assault with a deadly weapon in violation of California Penal Code § 245(a)(2) and sentenced to four years of imprisonment. The I.N.S. commenced deportability proceedings against Komarenko under 8 U.S.C. § 1251(a)(2)(C) for being an alien convicted of a firearms charge.

Komarenko concedes he is deportable, but submitted to the I.N.S. applications for asylum, withholding of deportation and waiver of inadmissibility. An Immigration Judge ("IJ") held that Komarenko was: 1) ineligible for asylum under 8 U.S.C. § 1158(a); 2) "statutorily ineligible" for withholding of deportation under 8 U.S.C. § 1253(h)(2)(B); and, 3) "statutorily ineligible" for waiver of inadmissibility under 8 U.S.C. § 1182(c).

Komarenko appealed to the Board of Immigration Appeals ("BIA"), which dismissed his appeal. The BIA concluded: 1) Komarenko was ineligible for waiver of inadmissibility under § 212(c) of the INA, based on the reasoning in *Cabasug v. I.N.S.*, 847 F.2d 1321 (9th Cir.1988); 2) Komarenko had been convicted of a "serious crime" and was therefore ineligible for asylum pursuant to 8 C.F.R. § 208.14(c)(1) and for withholding of deportation pursuant to 8 U.S.C. § 1253(h)(2)(B). Komarenko petitions for review of the BIA's dismissal of his appeal. *See* 8 U.S.C. § 1105a (1988).

## I

■ Komarenko argues the Immigration Judge's "absolute refusal" to allow him access to relief under § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1988), violates his right to equal protection of the law under the Due Process Clause of the Fifth Amendment. "It is well established that all individuals in the United States—citizens and aliens alike—are protected by the Due Process Clause of the Constitution. It is equally well established that the Due Process Clause incorporates the guarantees of equal protection." *Garberding v. I.N.S.*, 30 F.3d 1187, 1190 (9th Cir.1994) (citations omitted). "We review de novo the [BIA's] determination of purely legal questions regarding the requirements of the Im-

migration and Nationality Act." *Abedini v. I.N.S.*, 971 F.2d 188, 190–91 (9th Cir.1992).

We have held that "when the basis upon which the INS seeks deportation *is identical to a statutory ground for exclusion* for which discretionary relief would be available, the equal protection component of the fifth amendment due process guarantee requires that discretionary relief be accorded in the deportation context as well." *Gutierrez v. I.N.S.*, 745 F.2d 548, 550 (9th Cir.1984) (emphasis added); *see also Cabasug*, 847 F.2d at 1325; *Tapia–Acuna v. I.N.S.*, 640 F.2d 223, 224 (9th Cir.1981). This circuit has joined other circuits in reasoning that if a subsection of the exclusion statute is substantially identical to a subsection of the deportation statute, it would be irrational for the I.N.S. to treat differently the class of aliens who have not departed the United States and the class of aliens who have departed and then returned to the United States. *See Cabasug*, 847 F.2d at 1324–25; *Campos v. I.N.S.*, 961 F.2d 309, 315–17 (1st Cir.1992); *Francis v. I.N.S.*, 532 F.2d 268, 272–73 (2d Cir.1976). Such an arbitrary distinction between classes of aliens would amount to a denial of equal protection. *Cabasug*, 847 F.2d at 1324–25.

To extend this reasoning to the instant case, we would have to conclude that the deportation provision for aliens convicted for firearms charges and the exclusion provision for moral turpitude are "substantially identical." *See id.* at 1326. They are not. The deportability provision states: "Any alien who at any time after entry is convicted under *any law* of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying in violation of *any law*, any weapon, part, or accessory which is a firearm or destructive device . . . is deportable." 8 U.S.C. § 1251(a)(2)(C) (Supp. III 1992) (emphasis added). The exclusion provision states: "Except as provided in clause (ii), any alien convicted of . . . acts which constitute the essential elements of a crime involving moral turpitude . . . is excludable." *Id.* § 1182(a)(2)(A)(i)(I). Clause (ii) excludes from the moral turpitude exclusion aliens convicted of a misdemeanor. *Id.* § 1182(a)(2)(A)(ii)(II).

There is more than a technical distinction between these two provisions. First, the exclusion provision does not apply to misdemeanors, while the deportation provision does. *See Cabasug*, 847 F.2d at 1324. More importantly, although Komarenko's conduct could be a crime of moral turpitude, possession of a firearm will not always be a crime of moral turpitude, nor will crimes of moral turpitude necessarily involve firearms. *See Jordan v. De George*, 341 U.S. 223, 227–31 & n. 14, 71 S.Ct. 703, 705–08 & n. 14, 95 L.Ed. 886 (1951).

■ Komarenko argues, however, that the factual basis for his conviction, assault with a deadly weapon, could have rendered him excludable as an alien convicted of a crime involving moral turpitude under § 212(a)(2) of the INA. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I) (Supp. III 1992). We have not previously employed a factual approach to these types of cases, but have examined the classes of persons created by the excludability and deportation provisions to determine whether they created a "distinction that lacks a rational basis." *Cabasug*, 847 F.2d at 1323–26; *Gutierrez*, 745 F.2d at 550; *Tapia–Acuna*, 640 F.2d at 225. Other circuits also employ this approach. *See Francis*, 532 F.2d at 272 ("distinctions between different classes of persons must be reasonable, not arbitrary"); *Campos*, 961 F.2d at 316.[1] Thus, we must determine whether it is appropriate to change our approach. It is not.

Generally, when courts have found an equal protection violation, the excludability and deportation provisions have been substantially identical. That way, the only distinction between the two classes of persons the statute created was that one class of individuals had traveled abroad and returned, and the other had not. It is this arbitrary distinction that violates equal pro-

tection. In the instant case, the provisions are entirely dissimilar, and the distinction between the two classes is not arbitrary or unreasonable. *See Campos*, 961 F.2d at 316 ("We cannot say that it is absurd that for purposes of discretionary deportation review Congress chooses to treat different crimes differently."). For this reason, the linchpin of the equal protection analysis in this context is that the two provisions be "substantially identical."

■ Komarenko claims we must focus on the facts of his individual case and conclude that because he *could have been* excluded under the moral turpitude provision, he has been denied equal protection. We decline to speculate whether the I.N.S. would have applied this broad excludability provision to an alien in Komarenko's position. Were we to do so, we would extend discretionary review to every ground for deportation that could constitute "the essential elements of a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(II).[2] Such judicial legislating would vastly overstep our "limited scope of judicial inquiry into immigration legislation," *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977); *Francis*, 532 F.2d at 272, and would interfere with the broad enforcement powers Congress has delegated to the Attorney General, *see* 8 U.S.C. § 1103(a). We decline to adopt a factual approach to our equal protection analysis in the context of the deportation and excludability provisions of the INA, and we conclude that Komarenko was not denied his constitutional right to equal protection of the law.

## II

■ Komarenko argues 8 C.F.R. § 208.-14(c)(1) is invalid as an unreasonable exercise

---

1. The fundamental query in an equal protection claim that does not involve a suspect class is whether "[a] classification [is] reasonable, not arbitrary, and [rests] upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Stanton v. Stanton*, 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975) (internal quotations omitted).

2. We also would create an arbitrary distinction between aliens whose firearms convictions rise to the level of a crime of moral turpitude and those whose convictions do not, and then extend discretionary review only to those with the more serious convictions.

of power delegated to the Attorney General. In order to be valid, a regulation must be consistent with its enabling statute and must be reasonable. *Manhattan Gen. Equip. Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 399–400, 80 L.Ed. 528 (1935). The enabling statute states:

> The Attorney General shall establish a procedure for an alien physically present in the United States ... to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

8 U.S.C. § 1158(a) (1988). This is a broad delegation of power, which restricts the Attorney General's discretion to grant asylum only by requiring the Attorney General to first determine that the asylum applicant is a "refugee" under 8 U.S.C. § 1101(a)(42)(A).

■ Komarenko argues 8 C.F.R. § 208.-14(c)(1) is inconsistent with the enabling statute because Congress intended there to be no categories of aliens for whom asylum would be completely unavailable. However, Congress did not expressly declare such an intent in 8 U.S.C. § 1158(a). Because § 1158(a) is silent as to this specific issue, the question is "whether the agency's answer is based on a permissible construction of the statute." *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984). The statute merely states that "the alien may be granted asylum in the discretion of the Attorney General." 8 U.S.C. § 1158(a). It, therefore, does not preclude the Attorney General from exercising this discretion by promulgating reasonable regulations applicable to particularly dangerous or undesirable classes of aliens. Here, the Attorney General has promulgated a regulation denying asylum to all aliens who have been convicted of particularly serious crimes. This regulation is based on the reasonable determination that persons convicted of particularly serious crimes pose a danger to the community, *see Urbina–Mauricio v. I.N.S.,* 989 F.2d 1085, 1088 (9th Cir.1993), one that outweighs any equities such persons may have in their favor. Congress itself has elsewhere in the

INA made a virtually identical determination, and has with nearly identical language made withholding of deportation unavailable to aliens convicted of particularly serious crimes. 8 U.S.C. § 1253(h)(2)(B). Moreover, the Attorney General must still exercise individualized discretion in determining whether a given offense should be counted as "particularly serious." The BIA in this case, for instance, conducted a considerable factual examination of Komarenko's conviction before deciding it was particularly serious. The Attorney General has not exercised unreasonably the discretion Congress granted in the asylum statute.

We DENY the petition for review and petitioner's request for attorney fees.