# United States Court of Appeals
## For the First Circuit

No. 05-2462

SARETH KIM,

Petitioner,

v.

ALBERTO GONZÁLES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Saris,[*] District Judge.

Roberto Gonzalez and Audette, Bazar, Berren & Gonzalez Inc. on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Margot L. Nadel, Office of Immigration Litigation, Civil Division, Department of Justice, on brief for respondent.

November 16, 2006

[*]Of the District of Massachusetts, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  Sareth Kim is a native and citizen of Cambodia currently residing in the United States.  In January 1983, Kim's status was adjusted to that of "lawful permanent resident" of the United States.  In December 1993, Kim shot and killed another man who--Kim's sister told him--had sexually assaulted her.  In November 1994, Kim pled <u>nolo contendere</u> in Rhode Island state court to a charge of manslaughter, R.I. Gen. Laws § 11-23-3 (1993), and was sentenced to 10 years in prison.

In January 1995, deportation proceedings were begun against Kim on the ground that he had committed an "aggravated felony" rendering him deportable under 8 U.S.C. § 1251(a)(2)(A)(iii) (1994) (now renumbered § 1227 (2000)).  That category includes a "crime of violence," <u>id.</u> § 1101(43)(F), which is itself defined to include any crime

> that has as an element the use . . . of
> physical force against the person . . . of
> another . . . [or any felony] that, by its
> nature, involves a substantial risk that
> physical force against . . . another may be
> used in the course of committing the offense.

18 U.S.C. § 16 (1994).

In the administrative proceeding, the immigration judge found from the evidence that Kim had confronted the victim with a gun and shot the victim as he sought to drive away; that the crime was embraced by section 16's definition whether it comprised voluntary or involuntary manslaughter under Rhode Island law; and that Kim was not eligible for discretionary relief under section

-2-

212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994) (now repealed), because such relief was precluded for all aggravated felons by a 1996 statutory amendment to the immigration laws, Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277.

Kim sought review before the Board of Immigration Appeals ("Board" or "BIA") which in 1998 affirmed in a brief per curiam decision. Kim did not seek judicial review. However, on April 19, 2005, Kim filed a motion to reopen with the BIA renewing his request for section 212(c) relief. This new motion was based on a new regulation allowing such applications to be filed by April 26, 2005.[1]

The events leading up to the regulation are complicated but relevant to this proceeding. The immigration laws mandate exclusion--usually, a turning away at entry points--of aliens who have committed certain criminal offenses. See 8 U.S.C. § 1182(a) (2000). Until its repeal, section 212(c) allowed the Attorney General to grant a discretionary waiver from excludability in certain instances.[2] On its face, section 212(c) might appear to do

---

[1]Exec. Office for Immigration Review, Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1, 1997, 69 Fed. Reg. 57,826 (Sept. 28, 2004) (codified at 8 C.F.R. pts. 1003, 1212, 1240 (2006)).

[2]That subsection stated in relevant part that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily . . . and who are returning . . . may be admitted in the discretion of the Attorney General without regard

-3-

Kim no good because (1) he is not being excluded and (2) it has since been repealed. However, in 1976, another circuit court ruled that it was a denial of equal protection not to extend the same waiver opportunity to those being deported as was available to those being excluded, Francis v. INS, 532 F.2d 268, 273 (2d Cir. 1976), and the BIA thereafter accepted this position. In re Silva, 16 I. & N. Dec. 26, 30 (BIA 1976).

In 1990, Congress limited section 212(c) waivers by prohibiting any alien convicted of an aggravated felony who had served a term of at least five years from applying for such relief. Immigration Act of 1990, Pub. L. No. 101-649, § 511, 104 Stat. 4978, 5052. In 1996, Congress further limited the availability of section 212(c) waivers with the passage of AEDPA section 440(d), and then repealed section 212(c) entirely, Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546, 3009-597.

Thereafter, the Supreme Court determined (for reasons that need not concern us) that despite section 212(c)'s repeal, those who had pleaded guilty or nolo contendere before the 1996 amendments should retain the opportunity to seek such waivers. INS v. St. Cyr, 533 U.S. 289, 326 (2001). The Attorney General then adopted regulations allowing those (like Kim) protected by St. Cyr to reapply for section 212(c) relief by a date certain, see note 1,

_____

to the provisions of subsection (a)." 8 U.S.C. § 1182(c) (1994).

-4-

above, and Kim's request for such relief was filed before the deadline.

Although Kim's application was not untimely, the BIA in the decision now before us for review determined that Kim was not eligible to apply for such relief. Its stated reason was that he had been ordered deported for having committed a crime of violence--a type of aggravated felony--and there was no counterpart ground of exclusion in section 212(a) from which one could seek a waiver of excludability under section 212(c). The Board added that it "appear[ed]" that Kim had served more than five years and that "[i]f this is true," he would in any event be ineligible for section 212(c) relief.

Kim has now petitioned for review by this court of the BIA's decision. Kim seeks reversal on two different grounds: first, that the immigration judge erred in classifying Kim's manslaughter conviction as a crime of violence, and second, that in any event the BIA erred in saying that he was not eligible to be considered for section 212(c) relief. Kim also says that the BIA erred in suggesting that he had served five years in prison, but we doubt that the Board meant this conjecture as a ground for denying relief (it said "[i]f") and in any event do not ourselves rely upon it.

Kim's first claim--that no crime of violence occurred even though Kim approached the victim with a cocked gun and shot

-5-

him in the head as the victim fled--might seem frivolous to one not acquainted with immigration law. But Congress' wording, coupled with relevant court decisions, has resulted in a disregard of what actually happened and a focus instead upon the question whether the crime as defined by statute had to involve the identified characteristic (here, violence). E.g., Dickson v. Ashcroft, 346 F.3d 44, 48 (2d Cir. 2003).

Kim argues that manslaughter can be committed by accident, and so under a categorical test does not qualify as a crime of violence. This argument is foreclosed. Kim never sought judicial review of the BIA's ruling in 1998 which affirmed the immigration judge's finding that he was an aggravated felon; the time limit for doing so is jurisdictional, Ven v. Ashcroft, 386 F.3d 357, 359 (1st Cir. 2004), and cannot be end-run by a collateral attack several years later. In fact, Kim did not even raise the issue in the new BIA proceeding seeking section 212(c) relief and the BIA did not address it.

This brings us to Kim's second, more substantial claim which is fully preserved--namely, his claim that he is eligible to be considered for section 212(c) relief. Even if we agreed, this would not by itself entitle him to remain in this country. It would merely permit the Attorney General to grant a discretionary waiver of deportability. See 8 U.S.C. § 1182(c)(1994) (repealed). Nor is it clear how far any court would have authority to review a

denial of the waiver. See Avendano-Espejo v. Dep't of Homeland Sec., 448 F.3d 503, 505 (2d Cir. 2006) (per curiam).

However, for several different reasons, this kind of eligibility may itself be quite valuable to an applicant. The legal issue raised by Kim is not without difficulty because--although formally an issue of statutory construction--the possibility of such a waiver for deportees could not have been considered by Congress. Rather, it was created by post-enactment decisions of the courts.

As already explained, section 212(c) as written was part of a scheme that juxtaposed various grounds for exclusion (listed in section 212(a)) with qualified authority of the Attorney General (described in section 212(c)) to waive individual grounds in the case of certain permanent residents who were seeking to reenter this country. Under the Second Circuit's equal protection analysis, accepted by the BIA, any statutory waiver opportunity available to an excludable person must be available to a deportable person. See Francis, 532 F.2d at 273.

But "aggravated felony" and "crime of violence," although statutory grounds for deportation under specified conditions, were not themselves statutory grounds for exclusion; therefore the exclusion statute does not provide authority for waivers corresponding to those grounds. Accordingly, Kim has not been denied equal protection; Congress has not provided waivers for

exclusion on these grounds, so it need not provide waivers for deportation on these grounds.

To get around this syllogism, Kim argues that because his crime was voluntary manslaughter, he was guilty of "a crime involving moral turpitude," which _is_ a statutory ground of exclusion, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2000), and which also was waivable—before section 212(c) was repealed—so long as the individual had not served a term of imprisonment of at least five years for one or more aggravated felonies. See 8 U.S.C. § 1182(c) (1994) (repealed). So, Kim contends, the waiver authority should be extended to him under St. Cyr and the regulations.

Now, it is probable that Kim's crime was voluntary manslaughter but this is not certain; the immigration judge found it unnecessary to decide whether it was voluntary or involuntary manslaughter. Nor is it certain whether manslaughter of either type would be classified as a crime of moral turpitude under section 212(a). The phrase "moral turpitude" is one of the most ambiguous in the long list of ambiguous legal phrases, and the cases are far from consistent.

Some decisions use language that would apply to almost any serious crime with an aggravating element, e.g., Nguyen v. Reno, 211 F.3d 692, 695 (1st Cir. 2000) ("[A]n assault may or may not be a crime of moral turpitude"; "the dividing line is the aggravating element."). Other decisions stress the element of

-8-

corruption or deceit.  E.g., Padilla v. Gonzales, 397 F.3d 1016, 1020 (7th Cir. 2005) ("Crimes . . . that include dishonesty or lying as an essential element . . . tend to involve moral turpitude.").

In all events, we conclude that it would not matter even if Kim's actions in this instance could be considered a crime of moral turpitude as well as an aggravated felony and crime of violence.  As we read section 212(c), what the Attorney General had authority to waive, under certain conditions and before section 212(c)'s repeal, were particular grounds of exclusion; St. Cyr and the regulations now extend such waiver authority to counterpart grounds of deportation and preserve it for applicants who meet the time deadline.

But, as we have noted, there is no waiver authority for one who is excluded as an "aggravated felon" or one who commits a "crime of violence" (these not being grounds of exclusion).  So it is beside the point that a different ground of deportation (e.g., the "crimes of moral turpitude" ground) might have been waived if it also had been invoked against him.  If someone was found deportable on two different grounds, waiver of one would hardly avoid the other--for which waiver had not or could not be invoked.

Nor, as the Board has previously and correctly ruled, is there any basis for saying that, in general, crimes of moral turpitude and aggravated felonies or crimes of violence are

essentially the <u>same</u> category.  <u>In re Brieva</u>, 23 I. & N. Dec. at 772-73.  Aggravated felonies and crimes of violence are both categories of crimes or types of crimes, 8 U.S.C. § 1101(a)(43) (2000), 18 U.S.C. § 16 (2000); depending on the breadth of the phrase "moral turpitude," it would include some but not necessarily all of those crimes and would surely encompass others not on the list of defined crimes.

Our approach is the one taken by the Board, <u>In re Brieva</u>, 23 I. & N. Dec. 766, 772-73 (BIA 2005), and the Ninth Circuit, <u>Komarenko</u> v. <u>INS</u>, 35 F.3d 432, 435 (9th Cir. 1994)--the latter being the only considered circuit precedent in point.  The Ninth Circuit case involved a different set of grounds, but it used the same framework for analysis that we follow here.  Aside from constitutional issues, the Board's reading of the statute and its regulations is entitled to weight.

If this rather mechanical reading of the law frustrated any evident congressional intent or policy, we would look twice; but the opposite is true.  Congress never itself created waiver authority for those deported for aggravated felonies or crimes of violence (this resulted from judicial decision and administrative action), and Congress' own views on the subject of waivers are reflected in its repeal of section 212(c) in its entirety--an intention compromised by <u>St. Cyr</u> but only as to the effective date of the repeal.

-10-

If one followed the approach urged upon us by Kim, it would instead enlarge the frustration of Congress' own policy preference. Given the possible breadth of the moral turpitude concept, almost anyone could argue that although found deportable for a serious unwaivable crime, waiver authority should be interpolated because the crime was also one of moral turpitude. Indeed, the worse the crime, the stronger the argument would be.

It is not the business of the courts to tell Congress what to do about public policy choices, but we are entitled to warn when the machinery that we help administer is breaking down. The current structure of deportation law, greatly complicated by rapid amendments and loop-hole plugging, is now something closer to a many-layered archeological dig than a rational construct. The regime is badly in need of an overhaul.

Affirmed.