

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2007

# Calderon-Minchola v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3056

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Calderon-Minchola v. Atty Gen USA" (2007). *2007 Decisions.* Paper 88.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/88

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  06-3056
_____

DENIS SEGUNDO CALDERON-MINCHOLA,

Petitioner,

v.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent.


_____


On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A37-919-176)
Immigration Judge: Honorable Walter Durling
_____


Submitted Under Third Circuit LAR 34.1(a)
December 10, 2007

Before: McKEE, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed:   December 12, 2007)


_____


OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Denis Segundo Calderon-Minchola (Calderon) petitions for review of an order of the Board of Immigration Appeals (BIA), which affirmed an order of an Immigration Judge (IJ) finding him removable and pretermitting his application for a waiver of inadmissibility under former § 212(c) of the Immigration and Nationality Act (INA). For the reasons set forth below, the petition will be denied.

I.

Calderon is a 38 year-old citizen of Peru who became a lawful permanent resident of the United States in 1983. In 1997, Calderon was tried and convicted in the Court of Common Pleas of Philadelphia County of aggravated assault, criminal conspiracy, possessing instruments of a crime, simple assault, and recklessly endangering another person. He was sentenced to not less than 2 ½ years to no more than 10 years incarceration.

In 2005, Calderon was detained by U.S. Immigration and Customs Enforcement while reporting on parole and served with a Notice to Appear charging him with being removable as an aggravated felon who committed a crime of violence under 8 U.S.C. § 1101(a)(43)(F). The IJ sustained the charge, finding that Calderon's aggravated assault conviction constituted a "crime of violence" under the statute. The IJ also pretermitted Calderon's request for a waiver of inadmissibility under former § 212(c), finding that Calderon was statutorily ineligible. The BIA affirmed the IJ, and Calderon now appeals to this Court.

## II.

Former § 212(c) of the INA provided the Attorney General with discretion to waive the exclusion of certain lawful permanent residents who sought reentry to the United States after a temporary departure and were found excludable under one of the 33 grounds of exclusion set forth in § 212(a). Section 212(c) was repealed when the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208 (1996) became law. Because the Supreme Court subsequently held that Congress did not intend for IIRIRA to apply retroactively to lawful permanent residents who pleaded guilty to crimes before the passage of IIRIRA, *INS v. St. Cyr,* 533 U.S. 289 (2001), the INS permitted lawful permanent residents with convictions entered before April 1, 1997 to apply for a § 212(c) waiver. *See* 8 C.F.R. pts. 1003, 1212, and 1240.

The plain language of § 212(c) did not affect lawful permanent residents who had never left the country and were found deportable under one of the numerous grounds of deportation listed in § 241 of the INA, and for many years the BIA refused to grant § 212(c) waivers to lawful permanent residents in deportation proceedings. *See Matter of Arias-Uribe*, 13 I. & N. Dec. 696 (B.I.A. 1971). However, in *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976), the Second Circuit found that the BIA's rule violated the guarantee of equal protection implicit in the Due Process Clause of the Fifth Amendment, and held that deportable lawful permanent residents who had not left the country are eligible for § 212(c) waivers to the same extent as those seeking to reenter the country. *Id.* at 272-73.

3

In the wake of *Francis*, the BIA struggled to formulate an appropriate test for determining whether a deportee was similarly situated to an excludee, but ultimately settled upon a "comparable grounds" test in which it looked to whether the "ground of deportation charged is also a ground of inadmissibility." *See, e.g., Matter of Wadud*, 19 I. & N. Dec. 182, 184 (B.I.A. 1984). In 2004, the BIA changed course somewhat, promulgating a regulation making a lawful permanent resident ineligible for a § 212(c) waiver if he or she is deportable "on a ground which does not have a statutory counterpart in § 212 of the Act." 8 C.F.R. § 1212.3(f)(5). This "statutory counterpart test" turns on "whether Congress has employed similar language to describe substantially equivalent categories of offenses." *In re Blake*, 23 I. & N. Dec. 722 (B.I.A. 2005). Notably, the BIA has expressly found that a lawful permanent resident, like Calderon, who is found deportable for having committed an aggravated felony crime of violence, is not eligible to apply for a § 212(c) waiver. *In re Brieva-Perez*, 23 I. & N. Dec. 766 (B.I.A. 2005). In *Brieva*, the BIA rejected petitioner's argument that his conviction for a crime of violence had a statutory counterpart in § 212's ground of exclusion for crimes of moral turpitude, noting the different language used to describe crimes of violence and crimes involving moral turpitude and the "significant variance in the types of offenses covered by these two provisions." *Id.* at 773.

III.

4

Calderon asserts two principal arguments on appeal. First, he submits that the *Blake-Brieva* rule is inconsistent with past BIA precedent and creates the same "Equal Protection conundrum" identified in *Francis*. Calderon argues that the BIA must instead look to the underlying offense itself, not the statutory ground of removal actually charged, to determine if it could have been addressed under a specific ground of exclusion. Because his offense also could have subjected him to removal for having committed a crime of moral turpitude, which does have a statutory counterpart in § 212, this approach would make Calderon eligible for a waiver. Second, Calderon maintains that, even if the *Blake-Brieva* rule is correct, the BIA misapplied it in concluding that the "crime of violence" ground of removability has no statutory counterpart in § 212.

We recently rejected both of these arguments in *Coroleo v. Gonzales*, 476 F.3d 158 (3d Cir. 2007), which was decided after Calderon's opening brief was filed. Like Calderon, the petitioner in *Coroleo* was charged with being removable for having committed a crime of violence and argued that he was eligible for a § 212 waiver because his underlying offense, attempted murder, was also a crime of moral turpitude. We disagreed, and instead endorsed the BIA's reasoning in *Blake* and *Brieva*, that "the underlying crime for which [petitioner] was convicted plays no role" in determining eligibility for a § 212(c) waiver. *Id.* at 168. Rather, once the government has categorized the ground of removal, and that categorization has been sustained, the inquiry "focuses on whether *this statutory ground* for removal is substantially equivalent to any of the statutory grounds for exclusion in INA § 212(a)." *Id.* (emphasis in original). It is

5

"irrelevant that [petitioner's] conviction for attempted murder could have subjected him to removal as an alien convicted of a crime of moral turpitude." *Id.* We then proceeded to apply the *Blake-Brieva* test and concluded that the "crime of violence" ground of removal had no statutory counterpart in § 212, thus making the petitioner statutorily ineligible to apply for a § 212(c) waiver. *Id.*

Calderon urges us to reconsider our holding in *Coroleo*, arguing that we overlooked the substantial equal protection problem created by the BIA's *Blake-Brieva* approach. In support of this argument, Calderon has submitted the recent decision of the Second Circuit in *Blake v. Carbone*, 489 F.3d 88 (2d Cir. 2007), in which the court rejected the *Blake-Brieva* rule based upon "the equal protection principle articulated in *Francis*" and held that a deportable lawful permanent resident with an aggravating felony conviction is eligible for a § 212(c) waiver "if his or her particular aggravated felony offense could form the basis of exclusion under § 212(a) as a crime of moral turpitude" *Id.* at 104. As Congress "did not employ similar terms when writing the grounds of exclusion and grounds of deportation because it had no need to," the Second Circuit found it was "an exercise in futility to search for similar language to gauge whether equal protection is being afforded." *Id.* at 102.

We are unpersuaded. Contrary to Calderon's assertions, we did consider the equal protection implications of the *Blake-Brieva* rule in *Coroleo*. Indeed, we noted that the Ninth Circuit's conclusion in *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994), which we adopted after discussing at length, "follows directly from the equal protection concerns

6

that are the basis for the whole idea of a 'statutory counterpart'" *Coroleo*, 476 F.3d at 165. These equal protection concerns require that *statutory* classifications that are substantially identical be treated similarly, but do not require like treatment where the two classifications are dissimilar. *Id.* (citing *Komarenko*, 35 F.3d at 435). We also joined the Ninth Circuit in declining to adopt a factual approach to our equal protection analysis, finding that such "judicial legislating" would overstep the judicial role in immigration legislation and "interfere with the broad enforcement powers Congress has delegated to the Attorney General." *Id.* at 165-66 (quoting *Komarenko*, 35 F.3d at 435). We are unmoved by the Second Circuit's assertion that its holding in *Blake* is limited because it has "neither made a § 212(c) waiver available to all deportees with an aggravated felony conviction, nor put deportees in a better position than excludees." *Blake*, 489 F.3d at 104. Although this may be factually correct, the Second Circuit's approach nevertheless dramatically expands the scope of the Attorney General's review. *See Coroleo*, 476 F.3d at 165-66 (observing that a factual equal protection analysis would extend "discretionary review to every ground for deportation that could constitute 'the essential elements of a crime involving moral turpitude,'") (internal citation omitted). It also bears mentioning that the Second Circuit's holding is contrary to every other court of appeals to have addressed the issue since the BIA announced the *Blake-Brieva* rule. *See Kim v. Gonzales*, 468 F.3d 58 (1st Cir. 2006); *Sanchez v. Gonzales*, 473 F.3d 133 (5th Cir. 2006); *Valere v. Gonzales*, 473 F.3d 757 (7th Cir. 2007); *Soriano v. Gonzales,* 489 F.3d 909 (8th Cir. 2006) (per curiam)*; Abebe v. Gonzales*, 493 F.3d 1092 (9th Cir. 2007).

7

We are also unpersuaded by Calderon's assertion that his "plain language argument" regarding the divisibility of 18 U.S.C. § 16, which defines the term "crime of violence," distinguishes his case from *Coroleo*. The premise of this argument appears to be that the petitioner in *Blake* committed a "crime of violence" as defined in 18 U.S.C. § 16(b). Calderon, however, committed a crime of violence as defined in 18 U.S.C. § 16(a), and he claims it was therefore improper for the BIA to rely upon *Blake* in finding that § 16(a) had no statutory counterpart in § 212(a). Because, according to Calderon, the proper inquiry under *Blake-Brieva* is whether all possible offenses under the statute in question involve moral turpitude, and all offenses under § 16(a) would involve moral turpitude, § 16(a) has a statutory counterpart in § 212(a) even though § 16(b) may not.

This "plain language" argument misstates the *Blake-Brevia* rule and is in fact nothing more than a variation on Calderon's assertion that we should examine the underlying facts of his conviction. Moreover, Calderon's proposed test would be unlikely to yield the result he seeks because § 16(a) encompasses any offense "that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Thus, § 16(a) would appear to require none of the vileness, depravity, or reprehensible acts deliberately committed that we have held are characteristic of moral turpitude. *See DeLeon-Reynoso v. Ashcroft*, 293 F.3d 633 (3d Cir. 2002); *Partyka v. Attorney General,* 417 F.3d 408 (3d Cir. 2005).

## IV.

For the foregoing reasons, we will deny Calderon's petition for review.