**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTONIO REYES PAULO, III,
                        *Petitioner,*

                v.

ERIC H. HOLDER Jr., Attorney
General,
                        *Respondent.*

No. 07-71198

Agency No.
A039-825-666

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 16, 2011—San Francisco, California

Filed May 4, 2011

Before: Procter Hug, Jr., William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Robert B. Jobe, Law Offices of Robert B. Jobe, San Francisco, California, for the petitioner.

Daniel E. Goldman, James A. Hunolt, U.S. Department of Justice, Civil Division/Oil, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner Antonio Reyes Paulo, III ("Paulo") petitions for review of an order of the Board of Immigration Appeals ("BIA") pretermitting his application for a waiver of inadmissibility pursuant to the now-repealed § 212(c) of the Immigration and Nationality Act ("INA"). We hold that res judicata binds the BIA to the final decision of the District Court for the Northern District of California, which held that Paulo is eligible for discretionary relief under § 212(c) based on *INS v. St. Cyr*, 533 U.S. 289 (2001).

We grant Paulo's petition and remand for further proceedings consistent with this opinion.

## I.   Background

Paulo is a native and citizen of the Philippines. He was admitted to the United States as an immigrant on August 8, 1985. At that time he was fourteen years old. He is the son of a lawful permanent resident mother and a U.S. citizen father. He has a U.S. citizen daughter, born on October 28, 1997.

On September 5, 1991, Paulo was convicted in California state court of assault with a firearm in violation of California Penal Code § 245(a)(2). He served two years and nine months' imprisonment. For reasons not clear from the record, on October 26, 1994, a California Superior Court vacated this conviction, and Paulo pled guilty to assault with a deadly weapon other than a firearm in violation of California Penal Code § 245(a)(1). The new conviction was entered nunc pro tunc as of the date of the original conviction, and the sentence was unchanged. On March 30, 1998, Paulo pled guilty to receiving known stolen property in violation of California Penal Code § 496(a), and was sentenced to sixteen months' imprisonment.

On September 28, 1998, Paulo was served with a Notice to Appear based on these criminal convictions. The Notice charged him as removable under both INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for conviction of an aggravated felony, and INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), for conviction of two crimes involving moral turpitude not arising out of a single scheme. The aggravated felony charge was based on his conviction for assault with a deadly weapon, and the moral turpitude charge was based on both criminal convictions.

Paulo conceded removability and sought relief through withholding of removal, asylum, and the Convention Against Torture ("CAT"). For reasons not relevant to this appeal, the Immigration Judge ("IJ") concluded that Paulo was not eligible for either asylum or withholding of removal, and rejected Paulo's CAT claim. The IJ issued an order of removal to the Philippines on October 18, 2000. The BIA affirmed on February 22, 2001. This court dismissed the subsequent petition for review for lack of jurisdiction on May 23, 2001.

On June 25, 2001, the Supreme Court decided INS v. St. Cyr, 533 U.S. 289 (2001), a challenge to the retroactive application of the provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") that repealed INA § 212(c), formerly codified at 8 U.S.C. § 1182(c). Section 212(c) gave the Attorney General the discretionary power to grant relief from deportation to certain aliens convicted of criminal offenses. The Supreme Court held in *St. Cyr* that the repeal of § 212(c) cannot be applied retroactively to aliens who had, before the passage of IIRIRA, reasonably relied on the availability of § 212(c) relief in pleading guilty to offenses making them deportable. *St. Cyr*, 533 U.S. at 325-26. Under *St. Cyr*, Paulo was potentially eligible for § 212(c) relief.

Approximately one year later, on November 8, 2002, a California Superior Court vacated Paulo's conviction for receiv-

ing known stolen property on the ground that his plea had been unconstitutionally obtained. Paulo then pled guilty to false personation under California Penal Code § 529(3). False personation is not a crime of moral turpitude. Thus, Paulo was no longer removable under INA § 237(a)(2)(A)(ii).

Because the time in which Paulo was entitled to file a motion to reopen with the BIA had expired, *see* 8 C.F.R. § 3.2(c)(2) (2003), he petitioned for a writ of habeas corpus in the District Court for the Northern District of California on May 23, 2003. The two grounds for his petition were (1) that he was entitled to a new removal hearing because one of the grounds for his removal, his conviction of two crimes of moral turpitude, was no longer valid; and (2) that he was eligible for § 212(c) relief under *St. Cyr*.

The government objected to both grounds. As to the first ground, the government argued that Paulo was still convicted of an aggravated felony — assault with a deadly weapon other than a firearm — and thus his removal order should still stand under INA § 237(a)(2)(A)(iii). As to the second ground, the government argued that Paulo was not covered by *St. Cyr* because at the time Paulo pled guilty to assault with a firearm in 1991, a lawful permanent resident convicted of a firearm offense was not eligible for § 212(c) relief. The government argued that Paulo therefore could not have relied on the availability of § 212(c) relief when he pled guilty to assault with a firearm. The government argued that the fact that the conviction was changed to a non-firearm offense in 1994 was irrelevant. Furthermore, the government noted that § 212(c) relief was unavailable to an aggravated felon who had served a term of imprisonment of at least five years. The government argued (incorrectly) that Paulo had served a five-year sentence. The government made no other argument against Paulo's eligibility for § 212(c) relief.

The district court agreed with the government that because the removal order was based on two independent grounds, one

of which remained valid, Paulo was not entitled to a new removal hearing. However, the district court agreed with Paulo that he was eligible for § 212(c) relief based on *St. Cyr*. It agreed with the government that in 1991 a lawful permanent resident convicted of a firearm offense was ineligible for § 212(c) relief. It concluded, however, that the 1994 plea for assault with a deadly weapon other than a firearm was the relevant plea for the purposes of *St. Cyr's* reliance analysis. When Paulo pled guilty to assault with a deadly weapon other than a firearm, he was eligible for § 212(c) relief. The district court observed (correctly) that Paulo had only served a two-year and nine-month sentence, which was less than the five-year sentence necessary to bar an aggravated felon from § 212(c) relief. The district court granted Paulo's habeas petition on June 21, 2004. It ordered: "Respondents shall allow Petitioner to apply to the Attorney General for a discretionary waiver of deportation under former § 212(c) of the Immigration and Nationality Act." The government did not appeal and has not moved under Rule 60 for a modification of the district court's order.

In compliance with the district court's order, the BIA remanded the case to the IJ on December 22, 2004 to allow Paulo to apply for § 212(c) relief. The IJ held preliminary hearings in early 2005.

On April 6, 2005, the BIA decided *In re Blake*, 23 I. & N. Dec. 722 (BIA 2005), and on June 7, 2005, the BIA decided *In re Brieva-Perez*, 23 I. & N. Dec. 766 (BIA 2005). *Blake* and *Brieva* concern the "statutory counterpart rule" of § 212(c). By its plain language, § 212(c) applies only to aliens in exclusion proceedings, not removal (the post-IIRIRA term for deportation) proceedings. *See* INA § 212(c) (repealed 1996) (providing eligibility for relief to "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years"). In *Francis v. INS*, 532 F.2d 268

(2d Cir. 1976), however, the Second Circuit concluded that there was no rational basis for treating aliens who had traveled abroad and were attempting to return to the United States differently from aliens who had never left the United States. Based on constitutional avoidance, the Second Circuit extended § 212(c) to cover removable as well as excludable aliens. *Id.* at 273. The BIA acquiesced to *Francis* in *Matter of Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976). We agreed with *Francis* in *Tapia-Acuna v. INS*, 640 F.2d 223, 225 (9th Cir. 1981).

Because the application of § 212(c) to removable as well as excludable aliens is dependent on the equal protection argument underpinning *Francis*, courts, including this court and the BIA, have repeatedly held that in order for removable aliens to be eligible for § 212(c) relief, the statutory basis for their removability must have a statutory counterpart in the statutory bases for excludability. *See, e.g.*, *Komarenko v. INS*, 35 F.3d 432, 434 (9th Cir. 1994) (to prevent equal protection violation, § 212(c) need only cover deportable aliens when "a subsection of the exclusion statute is substantially identical to a subsection of the deportation statute"); *Matter of Esposito*, 21 I. & N. Dec. 1, 5-9 (BIA 1995); *Matter of Montenegro*, 20 I. & N. Dec. 603, 604-06 (BIA 1992); *Matter of Meza*, 20 I. & N. Dec. 257, 258-59 (BIA 1991). This requirement was codified in a post-*St. Cyr* regulation, promulgated on September 28, 2004, which provides that aliens are ineligible for § 212(c) relief if they are removable "on a ground which does not have a statutory counterpart in section 212 of the [INA]." 8 C.F.R. § 1212.3(f)(5).

Two related questions arise in the application of the statutory counterpart rule. The first is how similar a ground for excludability must be to a ground for removability in order to constitute a statutory counterpart. The second is, in deciding the similarity question, whether a court should focus on whether a given offense is covered by both an exclusion and a removal provision, or on whether the language of the

removability provision charged is similar to that of an excludability counterpart. The BIA's pre-*Blake* decisions, although not models of clarity, strongly suggested that some similarity in the language of the statutes is necessary, and that merely overlapping coverage is insufficient. *See Montenegro*, 20 I. & N. Dec. at 604-06; *Esposito*, 21 I. & N. Dec. at 5-9.

In *Blake* and *Brieva*, the BIA made clear that the question of whether a removability category has a statutory counterpart in an excludability category turns on the language of the provisions. *Blake*, 23 I. & N. Dec. at 728 (stating that the question "turns on whether Congress has employed similar language to describe substantially equivalent categories of offenses"). Even if there is "considerable overlap" between two categories, if the statutory language is dissimilar then the removable alien is not eligible for § 212(c) relief. *Id.* Based on *Blake*, *Brieva*, and earlier BIA and Ninth Circuit decisions, the government moved to pretermit Paulo's application for a § 212(c) waiver on October 6, 2005.

Paulo was found removable under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction of a crime of violence for which a term of imprisonment of one year or more was imposed, which constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. § 16. The government argued that because this removability provision has no statutory counterpart in the grounds of excludability, Paulo was not eligible for § 212(c) relief. The government also noted that 8 C.F.R. § 1212.3(f)(5) makes clear that the statutory counterpart rule survives *St. Cyr*. Paulo responded by arguing that, based on res judicata, the IJ and the government were bound by the district court's conclusion that Paulo is entitled to apply for discretionary relief under § 212(c). Paulo also argued that *Blake* violates the Equal Protection Clause under *Francis* and *Tapia-Acuna*, that *Blake* is a significant departure from past BIA practice and thus cannot be applied retroactively, and that the BIA's interpretation of 8 C.F.R. § 1212.3(f)(5) is unreasonable and impermissible.

In several hearings, the IJ expressed his dissatisfaction with *Blake*, but concluded that *Blake* controlled Paulo's case. On February 28, 2006, he pretermitted Paulo's § 212(c) application and ordered Paulo removed. He concluded that under *Clifton v. Attorney General of California*, 997 F.2d 660, 663 (9th Cir. 1993), res judicata does not apply when there has been an intervening change in the law. He concluded that *Blake* represented such a change, and that res judicata thus did not bar the Department of Homeland Security from challenging Paulo's eligibility for § 212(c) relief. The IJ further concluded that issue preclusion did not apply because the precise question of whether the lack of a statutory counterpart in the grounds of excludability makes Paulo ineligible for § 212(c) relief was not argued before the district court. The IJ also rejected Paulo's other claims. Because the parties agreed that under *Blake* the grounds for Paulo's removability had no statutory counterpart in the grounds for excludability, the IJ ordered that Paulo be removed. The BIA summarily affirmed. Paulo timely petitioned for review.

The Second Circuit has since disagreed with *Blake* and *Brieva*, concluding that the same constitutional avoidance principles motivating *Francis* require that the analysis under the statutory counterpart rule must focus on "whether [an alien's] underlying aggravated felony offenses *could* form the basis for exclusion," not on whether the language of the removability and exclusion provisions is similar. *Blake v. Carbone*, 489 F.3d 88, 105 (2d Cir. 2007) (emphasis added). In *Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009) (en banc) (per curiam), facing a similar claim, we took an entirely different approach. Instead of following either the BIA or the Second Circuit, we overturned our decision in *Tapia-Acuna* and held that providing § 212(c) relief to excludable but not removable aliens would not violate equal protection. *Id.* at 1205-06. We were careful, however, to state that "nothing we say today casts any doubt on [8 C.F.R. § 1212.3]," the post-*St. Cyr* regulation providing § 212(c) relief to many removable aliens based on the Second Circuit's holding in *Francis*. *Id.*

at 1207. Thus, in this Circuit, removable aliens are still eligible for § 212(c) relief so long as they can show, among other things, that the ground for their removability has a statutory counterpart in the grounds for excludability. *Pascua v. Holder*, ___ F.3d ___, Nos. 08-71636, 08-72705, 2001 WL 1024434, at *2 n.2 (9th Cir. Mar. 23, 2011); 8 C.F.R. § 1212.3(f)(5).

The Supreme Court recently granted certiorari to resolve the split between *Blake*, *Francis*, and *Abebe*. *Judulang v. Holder*, ___ S. Ct. ___, 2001 WL 1457529 (April 18, 2011). However, for reasons that we explain below, our opinion does not depend on the outcome in *Judulang*. We therefore will not delay our decision in this case to wait for the Supreme Court's decision.

## II.   Standard of Review

When the BIA affirms the IJ's decision without opinion, the decision of the IJ becomes the final agency determination reviewed by this court. *Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004). The BIA's determination of legal questions is reviewed de novo. *De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004).

## III.   Jurisdiction

We have jurisdiction under 8 U.S.C. § 1252(a)(1), which, with exceptions not applicable here, grants us jurisdiction over final orders of removal.

## IV.   Discussion

**[1]** The only issue on appeal is whether res judicata binds the IJ and BIA to the district court's holding that Paulo is entitled to apply for discretionary relief under § 212(c). Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigat-

ing issues that were or could have been raised in that action" even if that judgment "may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Res judicata bars relitigation of issues in immigration courts already litigated in Article III courts. *Matter of Fedorenko*, 19 I. & N. Dec. 57, 61-63 (BIA 1984); *Matter of Bowe*, 17 I. & N. Dec. 488, 489-90 (BIA 1980); *cf. United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolve[s] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."); *Ramon-Sepulveda v. INS*, 824 F.2d 749, 750 (9th Cir. 1987) (per curiam).

**[2]** Res judicata encompasses the doctrines of claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 & n.5 (2008). Issue preclusion, the doctrine more clearly applicable to this case, applies when: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (internal quotation marks omitted). The government makes two arguments. First, it argues that these requirements are not met. Second, it argues that, assuming these requirements are met, *Blake* and *Brieva* constitute new law such that res judicata does not apply. We address these arguments in turn.

## A. Applicability of Issue Preclusion

The government does not contest that the habeas proceeding in district court ended with a final judgment on the merits, nor does it contest that it was a party to that proceeding. The government argues, however, that the issue decided at the pre-

vious proceeding is not identical to the one sought to be reliti-gated. Specifically, the government argues both that the statutory counterpart question was not raised in the district court, and that the only issue resolved by the district court was that Paulo was entitled to apply for § 212(c) relief in the narrow sense of filing an application. We reject both of these arguments.

**[3]** The government is correct that the question of whether the statutory counterpart rule made Paulo ineligible for § 212(c) relief was not raised in the district court. The government could have made an argument addressed to this question, but it did not. The fact that a particular argument against Paulo's eligibility was not made by the government and not addressed by the district court does not mean that the issue of Paulo's eligibility for § 212(c) relief was not decided. *See Medina v. INS*, 993 F.2d 499, 503 n.15 (5th Cir. 1993). Issue preclusion is designed to "bar[ ] 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.' " *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). If a party could avoid issue preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined. *See* 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.02[2][c] (3d ed. 2010) ("If a new legal theory or factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determination of the issue is conclusive on the issue despite the fact that new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged."). The issue sought to be relitigated in this case is Paulo's eligibility for § 212(c) relief, which was decided in the previous proceeding by the district court.

**[4]** The government's argument that the district court's order entitled Paulo only to file an application for relief, and did not entitle him to have his application evaluated according

to the criteria for granting such relief, is also without merit. The district court ordered that the government "shall allow Petitioner to apply to the Attorney General for a discretionary waiver of deportation under former § 212(c) of the Immigration and Nationality Act." Although the government allowed Paulo literally to file the papers constituting the application for § 212(c) relief, it then moved for the IJ to pretermit the application. To pretermit generally means to ignore. *Black's Law Dictionary* (9th ed. 2009). The word "pretermit" "is used by the immigration court and the Board of Immigration Appeals whenever an alien is found ineligible to apply for some form of relief." *Gonzalez-Balderas v. Holder*, 597 F.3d 869, 870 (7th Cir. 2010).

**[5]** It is impossible to read the district court's order as requiring the government to allow Paulo to file the papers constituting a § 212(c) application, but then allowing the IJ and the BIA to ignore that application. Paulo could have filed a § 212(c) application that would have been pretermitted even before he filed his habeas petition. The district court clearly concluded that Paulo is eligible for § 212(c) relief, and ordered the government to proceed before the immigration courts based on its conclusion that Paulo was eligible. That does not mean that the district court required that Paulo be granted relief. But it does mean that the district court required that his application for § 212(c) relief be considered on the merits.

**[6]** We conclude that the requirements for issue preclusion are satisfied and that, barring an exception to res judicata, the government cannot relitigate Paulo's eligibility for § 212(c) relief.

## B. Change of Law Exception to Res Judicata

The government argues that if the basic requirements for issue preclusion are satisfied, *Blake* and *Brieva* constitute a change of law such that principles of res judicata do not

apply. The government cites *Clifton v. Attorney General of the State of California*, 997 F.2d 660 (9th Cir. 1993), for this exception. Paulo responds that *Clifton* created no exception to res judicata applicable to this case, and, further, that even if it did create such an exception, *Blake* and *Brieva* did not change the law. We agree with Paulo that *Blake* and *Brieva* did not change the law. Thus, even assuming change of law is an exception to res judicata, it is not applicable here.

**[7]** In our recent en banc decision in *Abebe*, we strongly suggested, if not directly held, that *Blake* and *Brieva* do not constitute a change of law. One of the petitioner's arguments in that case was that *Blake* and *Brieva* represented "new rules" and thus could not be applied retroactively. *Abebe v. Gonzales*, 493 F.3d 1092, 1105 (9th Cir. 2007), *vacated*, 514 F.3d 909 (9th Cir. 2008). The three-judge panel rejected this argument "for the simple reason that *Blake* and *Brieva* do not represent a change in the law." *Id.*; *see also id.* at 1102 ("[T]he BIA has not recently changed course but rather has maintained a consistent position for many years."). The panel noted that the BIA's approach has been settled "[s]ince at least the 1970s." *Id.* at 1105. Although the en banc court did not address this argument in great detail, it did "reject petitioner's due process retroactivity argument," and cited to the panel's analysis. *Abebe*, 554 F.3d at 1208 n.7. Thus the en banc court in *Abebe* appears to have concluded that *Blake* and *Brieva* did not change the law. The Second Circuit has reached the same conclusion. *Blake*, 489 F.3d at 98-99 (rejecting petitioner's retroactivity argument and concluding that *Blake* "has not [changed the law]" and "does nothing more than crystallize the agency's preexisting body of law").

**[8]** Even if this court's en banc decision in *Abebe* did not resolve this question, it is clear to us that *Blake* and *Brieva* did not effect a change of law. The statutory counterpart rule has existed for at least thirty years. *See, e.g.*, *Matter of Wadud*, 19 I. & N. Dec. 182, 184 (BIA 1984) ("[T]he Board has consistently held that section 212(c) can only be invoked in a depor-

tation hearing where the ground of deportation charged is also a ground of inadmissibility."). It has been applied in this court for at least twenty years. *See Cabasug v. INS*, 847 F.2d 1321, 1325-26 (9th Cir. 1988).

**[9]** Although *Blake* and *Brieva* represent the BIA's clearest statements on the issue, the BIA has regularly focused on the language of the excludability and removability provisions in applying the statutory counterpart rule rather than the overlap in coverage between excludability and removability provisions. For example, in *In re Jimenez-Santillano* the BIA "reject[ed] the respondent's contention that excludability under section 212(a)(6)(C)(i) of the Act for fraud or willful misrepresentation of a material fact before an immigration official to procure an immigration benefit . . . is comparable to deportability under section 241(a)(3)(B)(iii) for criminal convictions for document fraud or misuse under 18 U.S.C. § 1546(a)." 21 I. & N. Dec. 567, 573 (BIA 1996). The Board stated that its "focus 'is not whether the deportable alien's particular offense . . . *could* form the basis for a ground of exclusion and therefore be waivable; rather, the focus is whether the ground of deportation against the alien has a comparable ground of exclusion.' " *Id.* (quoting *Esposito*, 21 I. & N. Dec. at 7) (emphasis added). We similarly held, ten years before *Blake*, that § 212(c) relief is only available if "a *subsection of the exclusion statute* is substantially identical to *a subsection of the deportation statute*." *Komarenko*, 35 F.3d at 434 (emphasis added). Neither the BIA nor this court has ever held, or even suggested, that the relevant question is whether, irrespective of the language of the provisions, the conviction making the alien removable also makes the alien excludable. *Blake* and *Brieva* therefore did not change the law.

## Conclusion

We conclude that res judicata binds the BIA and the IJ to the district court's conclusion that Paulo is eligible for § 212(c) relief. For the purposes of Paulo's § 212(c) applica-

tion, the government, the BIA, and the IJ are to proceed based on Paulo's eligibility for § 212(c) relief. Thus, all that remains is for the BIA and the IJ to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country." *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978).

We grant the petition and remand for further proceedings consistent with this opinion.

**PETITION GRANTED; REMANDED.**