FILED
United States Court of Appeals
Tenth Circuit

April 9, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

PETELO FALANIKO,

        Petitioner,

v.

MICHAEL B. MUKASEY,* United
States Attorney General,

        Respondent.

No. 07-9516
(Petition for Review)

_____

**ORDER AND JUDGMENT***

_____

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

_____

Under former § 212(c) of the Immigration and Nationality Act (INA), a

lawful permanent resident (LPR) subject to removal could apply for a removal

waiver if the basis of removal was analogous to a ground of inadmissibility under

_____

\*     On November 9, 2007, Michael B. Mukasey became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Mukasey is substituted for Alberto R. Gonzales as the
respondent in this action.

\*\*     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

INA § 212(a). Petelo Falaniko sought such a waiver after he was charged with removal as an aggravated felon, but an Immigration Judge (IJ) denied his application. The IJ found that Mr. Falaniko's status as an aggravated felon convicted of a crime of violence rendered him ineligible for relief because there was no analogous ground of inadmissibility under INA § 212(a). The Board of Immigration Appeals (BIA) affirmed. Mr. Falaniko now petitions this court for review, arguing that he is eligible for a § 212(c) waiver despite his status as an aggravated felon. We reject his arguments and deny the petition for review.

**I**

Mr. Falaniko is a native and citizen of Western Samoa. He entered this country in 1975 as an LPR but pleaded guilty in 1994 to the Utah crime of forcible sexual abuse. Mr. Falaniko's conviction prompted the Department of Homeland Security (DHS) to initiate removal proceedings in 2003 under 8 U.S.C. § 1227(a)(2)(A)(iii), which authorizes removal of an alien convicted of an aggravated felony. Appearing before an IJ, Mr. Falaniko conceded the charges but sought a waiver under former § 212(c) of the INA. When the IJ denied his application, Mr. Falaniko appealed to the BIA, arguing, among other things, that he was eligible for a waiver under *INS v. St. Cyr*, 533 U.S. 289, 326 (2001), which held that Congress did not retroactively repeal § 212(c) to deny relief from otherwise eligible aliens. Mr. Falaniko argued that *St. Cyr* was dispositive because he was eligible and pleaded guilty before § 212(c) was repealed.

The BIA rejected Mr. Falaniko's argument. The BIA reasoned that notwithstanding *St. Cyr*, Mr. Falaniko remained ineligible for a § 212(c) waiver because the basis of his removal – his status as an aggravated felon convicted of a crime of violence – had no statutory counterpart under § 212(a) of the INA as required by 8 C.F.R. § 1212.3(f)(5). The BIA ruled that absent a statutory counterpart, Mr. Falaniko was ineligible for relief under § 212(c).

Mr. Falaniko subsequently petitioned this court for review, arguing that forcible sexual abuse has a statutory counterpart in § 212(a) as it is a crime of moral turpitude. He further argues that 8 C.F.R. § 1212.3(f)(5) violates *St. Cyr* because it retroactively attaches new disabilities to his plea agreement by imposing the statutory-counterpart requirement to qualify for a § 212(c) waiver. Lastly, he contends the BIA found him ineligible for a waiver because it analyzed the wrong definition of "aggravated felony." The government responds that the provision for crimes of moral turpitude under § 212(a) is not a statutory counterpart to the basis of Mr. Falaniko's removal; 8 C.F.R. § 1212.3(f)(5) does not violate *St. Cyr* because it merely codified existing law; and, in any event, we have no jurisdiction to consider the petition because it challenges a discretionary decision of the Attorney General.

## II

When the decision to grant or deny a removal waiver rests on an exercise of discretion, we have no jurisdiction to review it. *See* 8 U.S.C. § 1252(a)(2)(B)(ii);

*In re Edwards*, 20 I. & N. Dec. 191, 194-95 (BIA 1990). In this case, however, the denial of a removal waiver rested on the determination that Mr. Falaniko was not eligible for a waiver under § 212(c). This presents a question of law as to the applicability of § 212(c) and a constitutional claim of equal protection, both of which we review de novo. *See* 8 U.S.C. § 1252(a)(2)(D); *Ferry v. Gonzales*, 457 F.3d 1117, 1126 (10th Cir. 2006).

## A.

We begin by examining the evolution of waivers under the INA. Historically, the government could expel LPRs from this country in one of two ways: removal after entry, INA § 237 (8 U.S.C. § 1227), or exclusion upon reentry, INA § 212(a) (8 U.S.C. § 1182(a)). *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 683 (7th Cir. 2008). The nature of the proceeding dictated the type of waiver available: LPRs facing removal could apply only for a removal waiver under INA § 244, while inadmissible LPRs could apply only for a waiver of inadmissibility under § 212(c). This seemingly simple scheme sometimes created anomalous results, however, for if after temporarily leaving the United States an LPR returned and was not immediately placed in inadmissibility proceedings, he or she could apply only for a § 244 waiver when the government later initiated removal proceedings. But because § 212(c) waivers were easier to obtain, *see Blake v. Carbone*, 489 F.3d 88, 94 (2nd Cir. 2007), and were granted in more than

-4-

half the cases in which they were sought, *Hem v. Maurer*, 458 F.3d 1185, 1188 (10th Cir. 2006), these LPRs insisted they remained eligible for § 212(c) relief.

To remedy the problem, the agency extended § 212(c) inadmissibility waivers to LPRs who had temporarily gone abroad but were readmitted and subsequently faced removal. *See In re G– A–*, 7 I. & N. Dec. 274 (BIA 1956). And to correct the resultant equal-protection violation caused to LPRs who had never temporarily departed, courts and the agency further extended § 212(c) relief to certain LPRs facing removal who did not depart. *See Francis v. INS*, 532 F.2d 268, 271-73 (2nd Cir. 1976); *In re Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976). We approved this approach. *See Vissian v. INS*, 548 F.2d 325, 328 n.3, 330 (10th Cir. 1977) (noting BIA's changed position that a § 212(c) waiver of inadmissibility "may be granted to a permanent resident alien in a deportation proceeding regardless of whether he departs the United States following the act or acts which render him deportable," and recognizing that IJ's contrary conclusion was "apparently erroneous").

The catch, however, is that "not every act that renders someone [removable] makes him [inadmissible], and vice versa." *Zamora-Mallari*, 514 F.3d at 683. Thus, to ensure that an LPR subject to removal was similarly situated to an inadmissible LPR, the agency required that there be "a comparable ground" for removal and inadmissibility – that is, LPRs in removal proceedings could apply for a waiver under § 212(c) only if their basis for removal under

-5-

§ 237 was also a basis for inadmissibility under § 212(a).  *See Leal-Rodriguez*, 990 F.2d 939, 949 (7th Cir. 1993).

Eventually, after twice restricting aggravated felons from § 212(c) relief, Congress repealed § 212(c) altogether, *see* Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-597 (1996).  The Supreme Court in *St. Cyr*, however, ruled that IIRIRA did not apply retroactively to deny aliens relief under § 212(c) when they otherwise would have been eligible for relief at the time they pleaded guilty to the removable offense. 533 U.S. at 326.  *St. Cyr* thus reinstated the agency's comparable-grounds analysis to discern whether LPRs who pleaded guilty before Congress repealed § 212(c) were otherwise eligible for a § 212(c) waiver.

To ameliorate the complexity created by these administrative decisions, court cases, and Congressional actions, the agency promulgated 8 C.F.R. § 1212.3(f)(5).  That regulation provides that an LPR is not eligible for a § 212(c) waiver if he or she is removable "on a ground which does not have a statutory counterpart in section 212 of the Act."  8 C.F.R. § 1212.3(f)(5).  This "statutory counterpart" analysis replaced the agency's longstanding comparable-grounds analysis and remains the test used to ensure that removable aliens who seek relief under § 212(c) are eligible for a waiver.  It is against this backdrop that we proceed to consider Mr. Falaniko's arguments.

**B.**

1.  Statutory Counterpart Analysis:  Basis of Removal vs. Underlying Offense

Initially, Mr. Falaniko challenges the BIA's conclusion that § 212(a) contains no statutory counterpart to the basis of his removal.  He argues that his underlying crime, forcible sexual abuse, is a crime of moral turpitude, which is a basis of inadmissibility under § 212(a), s*ee* 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Several Courts of Appeals have rejected similar attempts to characterize a particular underlying offense as a crime of moral turpitude to satisfy the statutory-counterpart test.  *See, e.g., Kim v. Gonzales*, 468 F.3d 58, 62-63 (1st Cir. 2006); *Caroleo v. Gonzales*, 476 F.3d 158, 168 (3rd Cir. 2007); *Avilez-Granados v. Gonzales*, 481 F.3d 869, 872 (5th Cir. 2007); *Zamora-Mallari*, 514 F.3d at 691-93; *Vue v. Gonzales*, 496 F.3d 858, 863 (8th Cir. 2007).  The Ninth Circuit first forged the analytical trail followed by these courts, *see Komarenko v. INS*, 35 F.3d 432, 435 (9th Cir. 1994), but it recently has signaled a potential shift in its approach, *see Abebe v. Gonzales*, 493 F.3d 1092, 1104-05 (9th Cir. 2007) (reaffirming *Komarenko*), *pet. for reh'g en banc granted sub nom. Abebe v. Mukasey*, 514 F.3d 909 (9th Cir. 2008).  Only in the Second Circuit may an LPR assert that his underlying offense constitutes a crime involving moral turpitude for purposes of statutory-counterpart analysis.  *See Blake*, 489 F.3d at 103-05 (remanding cases to BIA to determine whether offenses constitute crimes of moral turpitude under § 212(a)).

The rift between the Second Circuit and these other circuits emanates from whether the statutory ground of removal or the underlying criminal offense should be compared to INA § 212(a) for purposes of statutory-counterpart analysis. The Second Circuit looks to the underlying criminal offense, while the rest examine the statutory ground of removal. The choice can have great implications in situations such as this, where the basis for removal – one's status as an aggravated felon convicted of a crime of violence – is not analogous to the basis of inadmissibility for having committed a crime involving moral turpitude, but the underlying offense constituting the aggravated felony, here – forcible sexual abuse, could qualify as a crime involving moral turpitude.

The Third Circuit took up the question in *Caroleo*, where an LPR had pleaded guilty to multiple offenses, including attempted murder. 476 F.3d at 160. Charged with removal for having committed an aggravated-felony crime of violence, the LPR sought a § 212(c) waiver, arguing that attempted murder is a crime involving moral turpitude, which is a ground of inadmissibility under § 212(a). *See id.* at 164. Rejecting the argument, the court explained that § 237 "lists the grounds upon which the Attorney General may order an alien removed" if the alien's underlying criminal conviction falls into one of the statutory grounds. *Id.* The court distinguished this preliminary analysis used to determine the LPR's removability, i.e., whether the underlying crime constituted an enumerated ground of removal under § 237, from a secondary analysis used to

-8-

determine whether the particular statutory ground of removal had a corresponding ground of inadmissibility under § 212(a). *See id.* Because the LPR's underlying crime – attempted murder – was an aggravated-felony crime of violence, the court found the crime "play[ed] no role in" determining whether the basis for his removal had a statutory counterpart for inadmissibility under § 212(a). *Id.* at 168. Instead, the court held that "[o]nce the government has categorized [the] offense as a 'crime of violence' in removal proceedings, and that categorization has been upheld, [the] § 212(c) inquiry focuses on whether *this statutory ground* for removal is substantially equivalent to any of the grounds for [inadmissibility]" under § 212(a). *Id.* The court thus looked to whether the LPR's ground for removal – his status as an aggravated felon convicted of a crime of violence – was the statutory counterpart to § 212(a)'s ground of inadmissibility for crimes of moral turpitude. *Id.* Under this analysis, the court found it clearly was not. *Id.*

By contrast, the Second Circuit in *Blake* focused on the underlying criminal offense, holding that eligibility for a § 212(c) waiver turns on whether an LPR's particular offense "*could* form the basis of a ground of [inadmissibility]." 489 F.3d at 104 (emphasis added). Like the other circuits, the Second Circuit rejected the broad proposition that aggravated felonies are per se crimes of moral turpitude and vice versa. But believing itself bound by precedent to "examine the circumstances of the [removable] alien, rather than the language Congress used to classify his or her status," the court declined to simply compare the statutory

grounds of removal to the statutory grounds of inadmissibility. *Id.* Instead, the court concluded that "[i]f the offense that renders a lawful permanent resident [removable] would render a similarly situated lawful permanent resident [inadmissible], the [removable] lawful permanent resident is eligible for a waiver of [removal]." *Id.* at 103.

The Second Circuit's decision in *Blake* is rooted in its earlier equal-protection case, *Francis*, 532 F.2d 268, where an LPR subject to removal was denied eligibility for a § 212(c) waiver because he had never temporarily departed the United States. The court found an equal-protection violation because other similarly situated LPRs in removal proceedings were deemed eligible for § 212(c) relief by virtue of the fact that they previously had left the country but were not immediately placed in inadmissibility proceedings when they reentered. The *Francis* court found the LPR's failure to temporarily depart the United States an "irrelevant and fortuitous factor[]" to his eligibility for § 212(c) relief, *id.* at 273, and thus required that eligibility for § 212(c) waivers be extended to non-departing LPRs in removal proceedings.

Attempting to adhere to *Francis's* mandate that "permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner," *id.*, the Second Circuit in *Blake* concluded that "what makes one alien similarly situated to another is his or her act or offense, which is captured in the INA as either a ground of [removal] or ground of

-10-

[inadmissibility]," 489 F.3d at 104. But by focusing on the underlying offense, the court neglected the varying circumstances that render LPRs removable versus inadmissible under the INA and thereby omitted from its analysis any mechanism to ensure that removable LPRs are similarly situated to inadmissible LPRs. Indeed, it is precisely because Congress delineated different grounds for removal and inadmissibility that LPRs in removal proceedings are not similarly situated to LPRs in inadmissibility proceedings unless the statutory basis for removal is substantially equivalent to a statutory basis for inadmissibility. *Valere v. Gonzales*, 473 F.3d 757, 762 (7th Cir. 2007). Absent this congruity, there can be no equal-protection violation. This has always been the reason for requiring a statutory counterpart:

> Generally, when courts have found an equal protection violation, the excludability and deportation provisions have been substantially identical. That way, the only distinction between the two classes of persons the statute created was that one class of individuals had traveled abroad and returned, and the other had not. It is this arbitrary distinction that violates equal protection. In the instant case, the provisions are entirely dissimilar, and the distinction between the two classes is not arbitrary or unreasonable. For this reason, the linchpin of the equal protection analysis in this context is that the two provisions be "substantially identical."

*Komarenko*, 35 F.3d at 435 (citation omitted).

By comparing the statutory grounds of removal to the statutory grounds of inadmissibility, courts are assured that LPRs in removal proceedings are similarly situated to LPRs in inadmissibility proceedings when the two provisions are

-11-

substantially equivalent. By contrast, comparing the underlying criminal offense does not ensure such congruity where, as here, the offense *could* be included among a broad category of inadmissible offenses, but need not be. We therefore agree with the First, Third, Fifth, Seventh, Eighth, and Ninth Circuits that the statutorily prescribed basis of removal should be compared to the statutory grounds of inadmissibility for purposes of statutory counterpart analysis.[1]

In Mr. Falaniko's case, he was ordered removed for having committed an aggravated-felony crime of violence. He does not challenge that classification. *See* Pet'r Br. at 7 ("his conviction for forcible sexual abuse, a crime of violence under § INA 101(a)(43)(F)"), 8-9 ("the crime of violence for which he was convicted"), 13 ("the crime of violence that formed the basis of the Notice to Appear"). Consequently, we look to whether this basis of removal is the statutory counterpart to crimes involving moral turpitude under INA § 212(a). "The BIA has held that the 'crime of violence' aggravated felony ground for removal under INA § 237 is not 'substantially equivalent' to INA § 212(a)'s 'crime involving moral turpitude' ground for [inadmissibility] such that the two can be considered statutory counterparts." *Caroleo*, 476 F.3d at 168 (emphasis omitted) (quoting

---

[1]     We recognize that our decision in *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1152-53 (10th Cir. 1999), could be read to suggest that LPRs subject to removal and inadmissibility are similarly situated. In that case, however, we expressly declined to decide whether aliens in removal proceedings are similarly situated to aliens in inadmissibility proceedings, ruling instead that any disparate treatment between the two classes of aliens was founded upon a rational basis. *See id. Jurado-Gutierrez* is entirely consistent with our disposition.

*In re Brieva-Perez*, 23 I. & N. Dec. 766, 772-3 (BIA 2005)). The BIA's interpretation of the INA is entitled to deference. *See Chevron, U.S.A., Inc. v Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Accordingly, because Mr. Falaniko's ground of removal has no statutory counterpart under INA § 212(a), he is not eligible for relief under INA § 212(c).

### 2. Retroactive Application of 8 C.F.R. § 1212.3(f)(5)

Mr. Falaniko next argues that 8 C.F.R. § 1212.3(f)(5) violates *St. Cyr* by retroactively establishing a new scheme for deciding his eligibility for a § 212(c) waiver. As we have already discussed, however, the regulation merely codified existing law. *See Vue*, 496 F.3d at 863. Indeed, 8 C.F.R. § 1212.3(f)(5) simply clarified the agency's preexisting comparable-grounds analysis after the Supreme Court issued its decision in *St. Cyr*. The regulation is not impermissibly retroactive because it does not deny or impair vested rights, nor does it create new obligations, impose new duties, or attach new disabilities. *See Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994).

### 3. Definition of "Aggravated Felony"

Lastly, Mr. Falaniko contends the BIA failed to find a corresponding statutory ground of inadmissibility because it analyzed the wrong definition of "aggravated felony." He maintains the BIA reviewed 8 U.S.C. § 1101(a)(43)(A), which includes "sexual abuse of a minor" in its definition of "aggravated felony," rather than § 1101(a)(43)(F), which defines "aggravated felony" as a "crime of

violence." It is clear from the BIA's decision, however, that the agency correctly examined § 1101(a)(43)(F). The BIA referenced "sexual abuse of a minor" while discussing the statutory-counterpart rule, but immediately cited an agency case that applied that rule to the definition of "aggravated felony" found at § 1101(a)(43)(F). Although the BIA cited § 1101(a)(43)(A) at the conclusion of its decision, it had already rejected Mr. Falaniko's eligibility arguments and was addressing his retroactivity contention. The BIA explained the Supreme Court's recognition in *St. Cyr* that the amended definition of "aggravated felony" clearly applied retroactively, while the provision of IIRIRA repealing § 212(c) did not. The BIA's citation of § 1101(a)(43)(A) is admittedly curious given that the Supreme Court did not specifically reference that subsection, but in the context of the BIA's decision, the citation does little more than exemplify the retroactive application of the entire amended definition. Under these circumstances, we cannot say the BIA examined the wrong definition of "aggravated felony."

The petition for review is DENIED.

Entered for the Court

Bobby R. Baldock
Circuit Judge