# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 4, 2008

Charles R. Fulbruge III
Clerk

No. 07-60181

JOSE THOMAS CASTANEDA, a.k.a. JOSE CASTANEDA

Petitioner

v.

MICHAEL B. MUKASEY, Attorney General of the United States

Respondent

Appeal from the United States Board of Immigration Appeals

Before KING, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Jose Thomas Castaneda was born in Nicaragua but lived with his parents, and later with his father, in the United States. His father was a naturalized citizen. In 1996, Castaneda was convicted of aggravated assault in Texas. The Immigration and Naturalization Service brought removal charges against him on the basis of this conviction. Castaneda argued that he was a derivative citizen and was protected by § 212(c) of the Immigration and Nationality Act. After several proceedings and appeals, the BIA held that Castaneda was not a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

derivative citizen and could not be afforded the protections of INA § 212(c). Castaneda appealed.

I

Castaneda was born in Nicaragua on February 14, 1974. His parents were married in Texas in 1982, and Castaneda and his parents became lawful permanent residents of the United States that same year. In July 1990, Castaneda's father became a naturalized citizen of the United States. His parents then separated. A December 1991 temporary restraining order prohibited Castaneda's father from instituting an action to obtain custody of his children, and a separate order required his father to pay child support. Castaneda was not listed as a child required to receive support; Castaneda urges that this was "presumably because he was in his father's custody." In January 1992, Castaneda's father became Castaneda's "Temporary Possessory Conservator" and his mother became "Temporary Sole Managing Conservator" by appointment of a Texas court. Castaneda's parents officially divorced in July 1992.

Later, in June 1996, Castaneda was convicted of aggravated assault with a deadly weapon under Texas Penal Code § 22.02 and sentenced to six years in prison. The former Immigration and Naturalization Service[1] took him into custody in October 2000 and charged him as removable pursuant to § 237(a)(2)(A)(iii) of the INA, which classifies as deportable any alien convicted of an aggravated felony after being admitted to the United States.[2] An immigration judge held that Castaneda was not a citizen, was removable, and was ineligible for relief under INA § 212(c), which at the time of Castaneda's conviction allowed the United States to admit aliens who had been previously

---

[1] The responsibilities of the former INS now reside within three agencies, all under the Department of Homeland Security.

[2] 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 2004).

lawfully admitted to the United States for permanent residence and "proceeded abroad voluntarily," provided they had not committed certain criminal offenses.[3] The IJ also denied Castaneda's claim for protection under the Convention Against Torture. Castaneda appealed to the Board of Immigration Appeals. In June 2002, the Board held that Castaneda had derivative citizenship under INA § 321(a), thus rendering him ineligible for deportation.[4] The Government filed a motion to reconsider. The BIA granted the motion, determining in November 2003 that it had erred in holding that Castaneda had derivative citizenship. The

---

[3] 8 U.S.C. § 1182(c) (West 2008, effective as of April 24, 1996) (repealed) ("Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.").

[4] 18 U.S.C. 1432(a) (West 1999). Section 321(a) then provided,

> A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

BIA vacated its prior decision and denied Castaneda's motion for remand, holding that he was ineligible for § 212(c) relief because his conviction under Texas law was an aggravated felony involving a crime of violence, and aliens convicted for this type of crime may not be considered for admission under § 212(c). Castaneda petitioned the BIA to reconsider its denial of his derivative citizenship claim. The BIA denied that motion but remanded for the IJ to consider Castaneda's application for relief under § 212(c). Once again before the IJ, the Department of Homeland Security added a charge for removability under INA § 237(a)(2)(C)[5] on the grounds that Castaneda's conviction for aggravated assault under Texas Law fell under § 237's definition of a firearms offense. The IJ held that Castaneda was removable under § 237(a)(2)(C) and that he was ineligible for § 212(c) relief. Castaneda again appealed to the BIA, which denied his claim of derivative citizenship and affirmed the IJ's holding that he was removable and ineligible for § 212(c) relief.

II

---

[5] Section 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C) (West 2004) then provided, as its does now,

> (a) Classes of deportable aliens
>
> Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
>
> 2) Criminal offenses
>
> (C) Certain firearm offenses
>
> Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

We have very limited jurisdiction to consider challenges to removal orders based on the commission of an aggravated felony;[6] we may only review "constitutional claims or questions of law"[7] raised by Castaneda.

On appeal, Castaneda argues that the Government waived its claim that Castaneda did not have derivative citizenship by adopting the IJ's statement of facts and opinion. The Government did not waive its claim, as the IJ held that Castaneda was removable – that he did not have derivative citizenship – and the Government could not have appealed that matter. The Government did contest, through a motion to reconsider, the BIA's derivative citizenship finding when the BIA sustained Castaneda's appeal from the IJ and held that he had derivative citizenship. As we have discussed, the Board on reconsideration vacated its earlier decision, finding that it had erred as a matter of law in holding that Castaneda had derivative citizenship.

Castaneda also argues that the BIA erred in holding that he lacked derivative citizenship. He urges that INA § 321, which defines derivative citizenship, does not require that the naturalized parent have sole legal custody. We held in Bustamente-Barrera v. Gonzales that "only sole legal custody satisfies" § 321's requirements.[8]

Alternatively, Castaneda urges that he is a citizen under the amended provisions of the Child Citizenship Act. On February 27, 2001, the effective date

---

[6] Hernandez-Castillo v. Moore, 436 F.3d 516, 519 (5th Cir.) ("The [REAL ID] Act amends 8 U.S.C. § 1252(a)(2)(C) to preclude all judicial review, habeas or otherwise, where a removal order is based on, inter alia, the alien's commission of an aggravated felony."), cert. denied, 127 S. Ct. 40 (2006).

[7] Id. (The REAL ID Act also provides, "'[n]othing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section'" (quoting 8 U.S.C. § 1252(a)(2)(D))).

[8] 447 F.3d 388, 395-96 (5th Cir. 2006), cert. denied, 127 S. Ct. 1247 (2007).

of the Act, Castaneda was over 18 years old. In Nehme v. INS, we held that the amended provisions of the act may "only be applied to alien children who satisfy the statute's conditions on or after February 27, 2001," including the condition that the child is under 18 years of age.[9] Castaneda was more than 18 years of age as of February 27, 2001.

## III

We now turn to Castaneda's argument that his conviction under Texas law for aggravated assault with a deadly weapon is not a firearm offense as defined by 8 U.S.C. § 1227(a)(2)(C). As a result, he urges, he is eligible for relief under § 212(c) of the INA. There are two approaches to interpreting whether the statute under which an alien is convicted falls within the definition of § 1227(a)(2)(C). The traditional approach is categorical, wherein we look to the language of "the statute under which the alien was convicted rather than at the particular underlying facts."[10] An "aggravated assault" under Texas Penal Code § 22.02(a)(2), the statute under which Castaneda was convicted, does not require the use or possession of a firearm for conviction; aggravated assault occurs where a defendant "(1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault."[11] But our inquiry does not end here.

We follow a second approach to statutory interpretation, the "modified categorical approach," "[i]f the statute of conviction defines multiple offenses, at least one of which does not describe an aggravated felony [under 8 U.S.C. §

---

[9] 252 F.3d 415, 431 (5th Cir. 2001). Castaneda urges that we revisit our holding in Nehme. We may not do so. See United States v. Treft, 447 F.3d 421, 425 (5th Cir. 2006) (citing United States v. Anderson, 853 F.2d 313, 320 (5th Cir. 1988)) ("Absent an intervening Supreme Court or en banc decision or a change in statutory law, we are bound to follow a prior panel's decision.").

[10] Omari v. Gonzales, 419 F.3d 303, 307 (5th Cir. 2005).

[11] Emphasis added.

1227(a)(2)(A)(iii)]."[12]  This approach is not limited to § 1227.  More generally, appellate courts are to follow this type of approach where the charging document contains broader language than the statutory offense in question.  In Shepard v. United States, for example, the Armed Career Criminal Act mandated a minimum 15-year sentence for anyone who possessed a firearm after having been convicted three times "for serious drug offenses or violent felonies."[13] Under the Act, burglary was "a violent felony only if committed in a building or enclosed space ('generic burglary')."[14]  It was not possible to determine from Shepard's charge, to which he had pled guilty, whether he had been convicted for generic burglary.  The Supreme Court held that the general standard of statutory interpretation is the same whether a defendant is convicted by a jury or pleads guilty to charges.[15]  Pursuant to Taylor v. United States, the sentencing court looks to "statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary" and similarly, where there is a guilty plea, "a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  The court may not look to police reports.[16]  The purpose of this limited inquiry is to read "statutes to avoid serious risks of unconstitutionality" and, consistent with Apprendi, "to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as Taylor

---

[12] Larin-Ulloa v. Gonzales, 462 F.3d 456, 464 (5th Cir. 2006).

[13] 544 U.S. 13, 15 (2005).

[14] Id. at 15-16.

[15] Id. at 19.

[16] Id. at 16, 26 (citing Taylor v. United States, 495 U.S. 575 (1990)).

constrained judicial findings about the generic implication of a jury's verdict."[17] A judicial determination on a disputed finding of fact underlying a plea or a jury verdict "raises the concern underlying Jones and Apprendi: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence."[18]

Following Shepard, we have held under a modified categorical approach that we may make "'reference to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal.'"[19] It follows that where, as here, a statute "defines multiple offenses, at least one of which does not describe" a firearms offense under 8 U.S.C. § 1227(a)(2)(C), we may look to the record of conviction to determine whether the conviction under the state statute falls within the ambit of § 1227(a)(2)(C) – defining as deportable an alien who has committed a firearms offense. Castaneda's indictment charged him with committing an aggravated assault by use of a firearm. Under the modified categorical approach, this confirms that his felony conviction under the Texas Code was for assault with a firearm. The definition of a firearm under the Texas Code corresponds with the federal definition.[20] Castaneda's conviction therefore falls

---

[17] Id. at 25-26 (citing Apprendi v. New Jersey, 530 U.S. 466 (2000); Jones v. United States, 526 U.S. 227, 239 (1999); Almendarez-Torres v. United States, 523 U.S. 224 (1998)).

[18] Id. at 25.

[19] Larin-Ulloa, 462 F.3d at 464 (quoting Dickson v. Ashcroft, 346 F.3d 44, 48-49 (2d Cir. 2003)).

[20] Texas Penal Code § 22.02 defines aggravated assault, inter alia, as the use or exhibition of "a deadly weapon during the commission of the assault," Texas Penal Code § 1.07(a)(17) includes "firearm" within its definition of a "deadly weapon," and Texas Penal Code § 46.01(3) defines "firearm" as "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." 18 U.S.C. § 921(a)(3) defines a firearm, inter alia, as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile

within the definition of a firearm offense under 8 U.S.C. § 1227(a)(2)(C), and the BIA did not err in holding that the protections of INA § 212(c) do not apply to Castaneda.[21]

AFFIRMED.

---

by the action of an explosive."

[21] "Under former § 212(c) of the Immigration and Nationality Act . . . a lawful permanent resident . . . subject to removal could apply for a removal waiver if the basis of removal was analogous to a ground of inadmissibility under INA § 212(a)." Falaniko v. Mukasey, 2008 WL 1696968, No.07-9516 at *1 (10th Cir. Apr. 9, 2008) (unpublished); see also Brieva-Perez v. Gonzales, 482 F.3d 356, 358 (5th Cir. 2007) (discussing a BIA decision holding that a petitioner's crime "lack[ed] a comparable ground for inadmissibility under INA § 212(a)"). In this case, there is no ground of inadmissibility under § 212(a) comparable to a § 237(a)(2)(C) firearms offense.